UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Joseph M. McKnight, Jr.,** | ) | Civil Action No.:_____ |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| **TransUnion, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Joseph M. McKnight, Jr., for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8. Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Joseph M. McKnight, Jr., is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant TransUnion, LLC, ("TransUnion") is a limited liability company

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 508 Meeting Street, West Columbia, South Carolina 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11. Defendant TransUnion is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13. Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

14. The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's TransUnion credit file, and failed to reinvestigate Plaintiff's disputes. Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

15. In mid-August 2022, Plaintiff received a collection call from USAA concerning an alleged credit card debt he owed. Plaintiff informed the caller he did not, nor had he ever had a credit card issued by USAA. Troubled by receiving a collection call, Plaintiff obtained copies of his credit reports. Plaintiff's credit reports were rife with fraudulent accounts for loans, credit cards, and utility bills that had been opened in his name without his consent or knowledge.

16. On August 29, 2022, Plaintiff filed an Identity Theft Report with the Federal Trade Commission.

17. In September 2022, Plaintiff learned that his estranged wife, Mary Lee McKnight, had opened numerous accounts and loans in his name without his permission.

18. On September 6, 2022, Plaintiff sent a written dispute letter to TransUnion via priority mail, disputing all of the fraudulent accounts appearing on his TransUnion credit report. Plaintiff never received a response from TransUnion to his letter.

19. On September 13, 2022, Plaintiff filed an Identity Theft Intake Form with the South Carolina Department of Consumer Affairs.

20. On September 14, 2022, Plaintiff filed a police report with the Florence County Sheriff's Office concerning the fraudulent accounts appearing on his credit reports.

21. In mid-September 2022, Plaintiff moved to Florence, South Carolina for a job opportunity in Darlington, South Carolina.

22. Thereafter, Plaintiff required surgery which kept him out of work on disability from October 12, 2022, through April 1, 2023.

23. Once Plaintiff was well enough to go back to work, he again began working to correct all of the fraudulent accounts appearing on his TransUnion credit report.

24. On or about November 15, 2023, Plaintiff obtained a copy of his TransUnion credit report, which was riddled with incorrect, inaccurate, and fraudulent information.

25. On or about December 5, 2023, Plaintiff sent a written dispute letter to Defendant wherein he specifically informed Defendant that he had been the victim of identity theft and fraud, and that he had learned that his estranged wife had opened numerous accounts and loans in his name without his permission. Plaintiff specifically set out and disputed the reporting of seven (7) accounts as fraudulently opened in his name without his knowledge: American Express; USAA Savings Bank; JPMCB Card Services; National Credit Adjusters, L.L.C.; WebBank/Fingerhut; WebBank/Gettington; and CNH Industrial Capital America LLC. Plaintiff also informed Defendant that 13 of the 14 phone numbers reporting on his credit report did not belong to him. Plaintiff disputed two addresses which were reporting on his credit report at which he never lived, and he disputed a hard inquiry for Rise/EDS as he never applied for credit from Rise/EDS, nor authorized them to pull his credit report. Plaintiff asked Defendant to add a fraud alert to his credit report and requested that all of the fraudulent accounts be deleted. Finally, Plaintiff provided Defendant his full social security number, date of birth, and address.

26. Defendant received Plaintiff's dispute on December 8, 2023.

27. On or about January 5, 2024, Defendant sent Plaintiff its alleged Investigation Results wherein Defendant informed Plaintiff that the American Express, CNH Industrial Capital America LLC, JPMCB Card Services, NCA, and USAA Savings Bank accounts

were all "Verified as Accurate." The WebBank/Fingerhut and WebBank/Gettington accounts were "Verified as Accurate and Updated." As a result, all seven of the fraudulent accounts remained on Plaintiff's credit report. Defendant did not reference Plaintiff's dispute regarding the 13 phone numbers reporting that did not belong to him. Upon review of Plaintiff's updated credit report also dated January 5, 2024, all 13 phone numbers remained. Finally, Defendant failed to remove one of the two incorrect addresses.

28. On or about February 1, 2024, Plaintiff sent another dispute letter to Defendant. In his letter, Plaintiff stated he had received Defendant's Investigation Results, but that Defendant was still reporting all seven fraudulent accounts as belonging to him. Plaintiff again specifically disputed all seven accounts as fraudulent. He also again disputed all but one of the phone numbers as not his. Finally, Plaintiff again disputed the Pamplico Highway address as not his. Plaintiff specifically requested that if Defendant did not remove all of the fraudulent accounts from his credit report, that Defendant send him a copy of each and every document it reviewed in deciding to keep the accounts on his credit report.

29. Defendant received Plaintiff's dispute on February 6, 2024.

30. On or about February 9, 2024, Defendant sent Plaintiff correspondence stating that it had previously investigated the NCA, JPMCB Card Services, USAA, WebBank/Fingerhut, American Express, and CNH Industrial Capital America accounts and each had been verified as accurate. Accordingly, Defendant informed Plaintiff that it would not be conducting any further investigation into his disputes.

31. On or about March 22, 2024, Plaintiff sent Defendant a new dispute letter stating he

6

had received Defendant's letter wherein Defendant stated it would not reinvestigate his disputes because the furnishers had already verified the accounts as accurate. Plaintiff reiterated he had been the victim of identity theft and fraud, and that he had learned his estranged wife had opened numerous accounts and loans in his name in September of 2022 without his permission. With his dispute letter, Plaintiff included a copy of the police report he filed.

32. On or about March 28, 2024, Defendant sent Plaintiff correspondence stating that, despite receipt of Plaintiff's police report, Defendant refused to block the fraudulent accounts from appearing on Plaintiff's credit because Plaintiff's request was either a) made in error; b) was a misrepresentation of material fact relevant to the request to block and/or c) Plaintiff obtained possession of goods, services or money as a result of the transaction issue.

33. On or about April 18, 2024, Defendant sent Plaintiff its Investigation Results showing that the NCA account had finally been deleted from his credit report. The Investigation Results also informed Plaintiff that the disputed American Express, CNH Industrial Capital America LLC, JPMCB Card Services, USAA Savings Bank, WebBank/Fingerhut, and WebBank/Gettington accounts had all been verified as accurate. Accordingly, Defendant continued reporting all six fraudulent accounts as belonging to Plaintiff. Additionally, the thirteen (13) telephone numbers Plaintiff disputed as not his were continuing to be reported on Plaintiff's TransUnion credit report.

34. To date, Defendant continues to refuse to block the fraudulent account information from Plaintiff's TransUnion credit file and continues to incorrectly report multiple

fraudulent accounts and telephone numbers as belonging to Plaintiff.

35.  Defendant failed to make a reasonable investigation into Plaintiff's disputes.

36.  Upon receipt of the ACDV responses from the furnishers of the fraudulent account information, Defendant simply accepted the furnishers' verifications of the Accounts and did not undertake to perform any investigation of its own.

37.  For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

38.  If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

39.  Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-

SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

40. During the time that the fraudulent accounts have continued to be reported by Defendant on Plaintiff's credit report, Plaintiff's credit report has been viewed and used to evaluate Plaintiff for credit, promotional inquiries and/or account reviews by TBOMMILESTONE, Axcess Financial, and Elan Financial Services.

## COUNT ONE
(Fair Credit Reporting Act)

41. The Plaintiff adopts the averments and allegations of paragraphs 15 through 40 hereinbefore as if fully set forth herein.

42. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

43. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

44. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit and/or increased cost of

credit, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded him from seeking further credit opportunities and also caused him to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

45.     In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

46.     Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

47.     The Plaintiff adopts the averments and allegations of paragraphs 15 through 46 hereinbefore as if fully set forth herein.

48.     Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

49.     Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

50.     Due to Defendant's willful failure to comply with the requirements of the Fair Credit

Reporting Act, Plaintiff is entitled to statutory damages.

51. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit and/or increased cost of credit, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded him from seeking further credit opportunities and also caused him to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

52. In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

53. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

54. Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.    Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.    For such other and further relief as the Court may deem just and proper

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Trans Union, LLC
c/o The Prentice-Hall Corporation System, Inc.- Registered Agent
508 Meeting Street
West Columbia, SC 29169